IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JANUARY 1997 SESSION

FILED

April 3, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9604-CC-00160 |
| Appellee, | ) | |
| | ) | DICKSON COUNTY |
| VS. | ) | |
| | ) | Hon. Robert E. Burch, Judge |
| BILLY JOE BAGGETT, | ) | |
| | ) | (Aggravated Burglary) |
| Appellant. | ) | |

FOR THE APPELLANT:

DAVID D. WOLFE
304 East College
Dickson, TN 37055

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

EUGENE J. HONEA
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

DAN MITCHUM ALSOBROOKS
District Attorney General

JAMES W. KIRBY
Assistant District Attorney General
105 Sycamore Street
Ashland City, TN 37015

OPINION FILED: _____

AFFIRMED

JOE G. RILEY,
JUDGE

## OPINION

The appellant, Billy Joe Baggett, was convicted by a jury of aggravated burglary. The trial court sentenced him to fifteen (15) years as a Range III, Persistent Offender. On appeal, he presents ten (10) issues for our review:

> (1) whether the evidence was sufficient to support a finding of guilt beyond a reasonable doubt for aggravated burglary; (2) whether the trial court erred in allowing the state to introduce tape recordings of four (4) telephone conversations between Baggett and a state informant; (3) whether the trial court erred in allowing the state to introduce a prybar into evidence; (4) whether the trial court erred in allowing the state to use prior convictions for impeachment purposes; (5) whether the trial court erred in allowing the state to present evidence of Baggett's escape from jail; (6) whether the trial court erred in not granting a mistrial following a state witness' prejudicial remarks; (7) whether the trial court erred in allowing evidence of Baggett's preferential treatment while in jail; (8) whether the charge to the jury as to reasonable doubt was unconstitutional; (9) whether the trial court erred in sentencing Baggett; and (10) whether the delay in hearing the motion for new trial violated his right to a speedy appeal.

We affirm the judgment of the trial court.

## FACTS

The proof at trial showed that Detective Mark Coulon was contacted by Darryl Dooley, who was incarcerated at the Cheatham County Jail, with some information regarding Billy Joe Baggett. He informed Detective Coulon that Baggett was trying to set up a burglary and was asking for Dooley's help. Detective Coulon then contacted TBI Special Agent Mike Breedlove with this information.

With the consent of Tom Grogan, Special Agent Breedlove planned a burglary of the Grogan residence. Breedlove arranged for Dooley to contact Baggett with information on how and when the burglary would take place. Dooley agreed to allow the TBI to tape record telephone conversations between himself and Baggett.

During these conversations, Dooley and Baggett discussed the details of the upcoming burglary. Dooley gave Baggett the address of the Grogan residence and told Baggett when Grogan would be out of town and what to look for when he got

2

inside the house.

Law enforcement officers monitored the Grogan residence. Baggett and a co-defendant were spotted entering the garage of the Grogan residence and were arrested inside the garage by the officers. Baggett was wearing latex surgical gloves and was carrying a pair of pliers, a small flashlight and a pocket knife. Another flashlight was found in the area where Baggett was apprehended. Although the officers did not search the garage for any "burglary tools" at that time, Grogan later found a prybar underneath a desk in the garage and turned it over to the officers.

After a jury trial, Baggett was found guilty of aggravated burglary. He was sentenced to the maximum of fifteen (15) years as a Range III, Persistent Offender.

## SUFFICIENCY OF THE EVIDENCE

Baggett claims that the evidence is insufficient to support a guilty verdict beyond a reasonable doubt. He testified at trial that the reason for his being in the Grogan household was to collect money Grogan owed to Dooley because Dooley owed Baggett money for marijuana. Therefore, he contends that this negates the state's proof that he had the intent to commit theft when he entered the residence, a requisite element of burglary. *See* T.C.A. § 39-14-402(a)(1).

Great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for an

3

appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); State v. Duncan, 698 S.W.2d 63 (Tenn. 1985); T.R.A.P. 13(e).

The mere fact that Baggett's testimony provided the jury with another reason as to why he was in the Grogan residence does not make the evidence insufficient. Obviously, the jury did not believe his testimony. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978). Therefore, because we find that otherwise the record clearly supports a verdict of guilty beyond a reasonable doubt, this issue is without merit.

## ADMISSION OF TAPE RECORDINGS

Baggett next contends that the trial court erred in admitting into evidence four (4) tape recorded conversations between Dooley and himself. He claims that there were as many as fourteen (14) conversations that were not taped. Therefore, he maintains that because all of the conversations between Baggett and Dooley could not be introduced, none should have been presented to the jury because of the danger of misleading or confusing the jury pursuant to Rule 403 of the Tennessee Rules of Evidence.

The determination whether or not evidence is admissible is left to the sound discretion of the trial court. State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994); State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989). This Court will not disturb that finding absent a showing of abuse of discretion. Id. We find that the trial judge did not abuse his discretion.

The taped conversations were relevant to the burglary charge. Evidence is relevant if it "has a tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without

4

the evidence." State v. Harris, 839 S.W.2d 54, 71 (Tenn. 1992), T.R.E. 401. There is no constitutional violation to tape record a conversation before the defendant is charged. State v. Branam, 855 S.W.2d 563, 568 (Tenn. 1993). Additionally, there was no unfair prejudice to Baggett as he testified to what was discussed during the other conversations. As there is no showing of abuse of discretion, the tapes were properly admitted.

Baggett further contends that the tapes should have been excluded because of some discussions regarding Baggett supplying Dooley with marijuana while Dooley was incarcerated in the Cheatham County Jail. As a general rule, evidence of other crimes or bad acts would not be admissible. State v. Parton, 694 S.W.2d 299 (Tenn. 1985); T.R.E. 404(b). However, under the circumstances of the case, any error was, at best, harmless because Baggett testified that Dooley owed him money for supplying Dooley with marijuana. Accordingly, this issue has no merit.

## ADMISSION OF PRYBAR

Baggett's next argument concerns the admission of a prybar which was found by Grogan while he was cleaning his garage about thirty days after the incident. Grogan found the prybar underneath a desk which was within a foot or so from where Baggett's accomplice was standing at the time of his arrest. As the prybar was not his, Grogan turned it over to the police. Because it had a rough exterior, the police did not test the prybar for fingerprints. The prybar was subsequently introduced into evidence as a "burglary tool." Baggett claims that because of the lapse of time and the lack of any fingerprint testing, the prybar should have been excluded as it was highly prejudicial.

The mere fact that evidence is prejudicial to the defendant does not make it inadmissible as a matter of law. State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989). The prybar was relevant as it showed the intent of Baggett on the night of the incident. See State v. Harris, 839 S.W.2d at 71. The jury could reasonably infer that the prybar was used in the burglary. This is more a question

5

of the weight of the evidence rather than its admissibility. The trial judge properly admitted the prybar into evidence.

## ADMISSION OF PRIOR CONVICTIONS

Baggett's next contention is that the trial court improperly allowed the state to use his prior convictions of receiving and concealing stolen goods for impeachment purposes. Because of the similarity between the prior convictions and the charge of burglary, he claims that the prejudice outweighed any probative value for truthfulness.

Upon learning that Baggett intended to testify at trial, the trial court conducted a hearing on the issue of admitting his prior convictions. After determining that the probative value on credibility outweighed any unfair prejudice to Baggett, the trial court ruled that the state could use the prior convictions for receiving and concealing stolen property for impeachment. As a result, defense counsel asked Baggett about these prior convictions on direct examination.

Rule 609(b)(3) of the Tennessee Rules of Evidence provides that in order to impeach a witness who is the defendant in a criminal prosecution with prior criminal convictions, the court must determine that the "conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." In making the determination as to whether the probative value outweighs the prejudice to the defendant, the trial court should (a) assess the similarity between the crime on trial and the crime underlying the impeaching conviction and (b) analyze the relevance the impeaching conviction has to the issue of credibility. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).

Although the convictions for receiving and concealing stolen goods are somewhat similar to the burglary charge, the prior convictions are probative of dishonesty. This Court has previously held that it is not error to admit prior convictions that involve dishonesty, even though the prior convictions and the pending charge are relatively similar. State v. Wright, 836 S.W.2d 130 (Tenn. Crim.

6

App. 1992).

We find that it was proper to admit the prior convictions. The convictions for receiving and concealing stolen goods are relevant to Baggett's credibility. The trial judge balanced the probative value against any prejudice to the defendant. Two larceny convictions were excluded because the trial court believed that the prejudice outweighed any probative value as to credibility. The trial court properly allowed evidence of Baggett's prior convictions for receiving and concealing stolen goods.

## ADMISSION OF JAIL ESCAPE

Baggett next argues that evidence that he escaped from jail while awaiting trial should have been excluded because it happened six (6) months after his arrest. Evidence that an accused has escaped from custody is admissible for the purpose of "establishing the accused's guilt, consciousness of guilt, or knowledge of guilt." State v. Burton, 751 S.W.2d 440, 450 (Tenn. Crim. App. 1988). Contrary to Baggett's position, the length of time between the commission of the offense and the escape is irrelevant. Craig v. State, 455 S.W.2d 190 (Tenn. Crim. App. 1970). This issue has no merit.

## MISTRIAL

Baggett contends that a mistrial should have been declared based on a statement that he was well known to law enforcement. Specifically, Baggett claims that it was error for the trial court to allow the following exchange on the prosecution's direct examination of TBI Special Agent Breedlove:

> Q:    "Why, Agent Breedlove, was Mr. Baggett, to use
> the term that's been used before, I think, 'targeted'
> in this particular offense? Why did you set your
> sights on Billy Joe Baggett?".

> A:    "Well, Mr. Baggett is well-known in the law enforcement--".

At this point, defense counsel objected and the trial judge promptly sustained the objection. The trial judge further instructed the jury to disregard the statement.

7

The decision whether to grant a mistrial is within the discretion of the trial judge, whose action will not be disturbed on appeal unless there was an abuse of that discretion. State v. Millbrooks, 819 S.W.2d 441 (Tenn. Crim. App. 1991). Objections interposed by defense counsel were sustained, and the trial judge gave a curative instruction to the jury. It is presumed that the jury followed the trial judge's instructions not to consider inadmissible evidence. Id. This issue is without merit.

## PREFERENTIAL TREATMENT

Baggett next argues that evidence of alleged preferential treatment in the Cheatham County Jail should have been excluded because it was irrelevant and highly prejudicial. Determinations as to the relevance and probative value of evidence are within the sound discretion of the trial court. State v. Leath, 744 S.W.2d 591,593 (Tenn. Crim. App. 1987); Gray v. State, 235 S.W.2d 20 (Tenn. 1950).

Baggett called a jailor at the Cheatham County Jail as a witness to introduce certain jail log records. On cross examination, the state was allowed, over objection, to question the jailer about alleged preferential treatment that Baggett received while incarcerated. The trial judge conducted a jury out hearing to determine the relevance of the questioning. The state argued and the trial court agreed that the testimony concerning preferential treatment was probative as to the credibility of the jailor. The trial judge further limited the prosecution's questions to those only concerning treatment from that particular jailor. The record in this case supports the trial court findings; therefore, this issue is without merit.

## JURY CHARGE

Baggett next argues that the trial court's reasonable doubt instruction was

unconstitutional. He contends jurors could find guilt based on a degree of proof below that required by the Due Process Clause.

The trial court gave the following instructions to the jury:

> The State has the burden of proving the guilt of each defendant beyond a reasonable doubt, and this burden never shifts but remains on the State throughout the trial of the case. The defendant is not required to prove his innocence.
>
> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a capricious, possible, or imaginary doubt.
>
> Absolute certainty of guilt is not demanded by law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

Taken in the context of the entire jury charge, use of the phrase "moral certainty" in a reasonable doubt instruction is constitutional. *See* Nichols v. State, 877 S.W.2d 722, 734 (Tenn. 1994); State v. Sexton, 917 S.W.2d 263, 266 (Tenn. Crim. App. 1995); Pettyjohn v. State, 885 S.W.2d 364, 366 (Tenn. Crim. App. 1994); State v. Hallock, 875 S.W.2d 285, 294 (Tenn. Crim. App. 1993). This issue is without merit.

## EXCESSIVE SENTENCE

Baggett next contends that the sentence imposed by the trial court was excessive. The trial court sentenced Baggett, a Range III, Persistent Offender, to the maximum sentence for aggravated burglary. Baggett argues the trial court should have given more weight to mitigating factors.

When there is a challenge to the length, range or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d). The presumption of correctness which attaches to the trial court's action is conditioned upon an affirmative showing in the record that the trial court

9

considered appropriate sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Accordingly, the defendant has the burden of showing that the sentence is improper. State v. Holland, 860 S.W.2d 53 (Tenn. Crim. App. 1993).

When conducting our *de novo* review, relevant factors to consider are: (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210.

In calculating the sentence for Class B, C, D, or E felony convictions, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. T.C.A. § 40-35-210(c); State v. Smith, 926 S.W.2d 267 (Tenn. Crim. App. 1995). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. T.C.A. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. T.C.A § 40-35-210(e). So long as the trial court complies with appropriate sentencing principles and its findings are supported by the record, weight to be afforded an existing factor is in the discretion of the trial court. *See* State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

Baggett was convicted of aggravated burglary, a Class C felony. The trial court found Baggett to be a Range III, Persistent Offender. As such, Baggett could receive a sentence between ten and fifteen years. Based on the presentence report, the trial court found Baggett had a prior conviction for escape, two prior convictions for grand larceny, two convictions for passing worthless checks, a conviction for second-degree burglary, and twenty prior convictions for possession of stolen property. The trial court also noted that Baggett was on probation for several offenses when he committed the burglary

10

in this case.

The trial court properly found only one mitigating factor in that Baggett's criminal conduct did not cause or threaten serious bodily injury. T.C.A. § 40-35-113(1). Given Baggett's extensive criminal history, the court had the discretion to give it little weight. *See* State v. Santiago, 914 S.W.2d 116 (Tenn. Crim. App. 1995). The record in this case supports the fifteen-year sentence imposed by the trial court.

## SPEEDY APPEAL

Baggett finally contends that a delay in hearing his motion for new trial violated his Sixth Amendment right to a speedy trial. On February 16, 1994, defense counsel for Baggett requested and the trial court ordered that a transcript be prepared and produced for use prior to argument on the motion for new trial. The sentencing judge had initially set the hearing on the motion for a new trial on May 9, 1994. On September 6, 1994, defense counsel wrote a letter to the circuit court clerk indicating that he had been contacted by the court reporter preparing the transcript and was advised the motion for new trial was reset for September 12, 1994, because she had not completed the transcript. By July 17, 1995, the motion for new trial had not been heard nor had Baggett received the trial transcript. Baggett then filed a motion to set motion for new trial and compel production of the transcript.

Our courts have adopted the four factor speedy trial analysis set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) . *See* State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981); State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973). However, the Barker factors have not, until recently, been applied to appellate delay cases alleging violation of the Sixth Amendment right to a speedy trial. In United States v. Smith, 94 F.3d 204, 208 (6th Cir. 1996), the Sixth Circuit transplanted the Barker factors in analyzing violations of the right to a speedy trial, with slight modifications, as the framework for

11

evaluating appellate delay cases. In doing so, the Court recognized that an excessive delay in the appellate process may also rise to the level of a due process violation. Id. at 207. The court must examine the conduct of the government and the defense to determine whether a violation of defendant's due process right to a prompt appeal has occurred. In this process the court balances four factors: (1) length of delay; (2) reason for delay; (3) whether defendant asserted his right; and (4) whether defendant was prejudiced by the delay. Id.

We have examined these various factors relative to the delay in hearing the motion for new trial. We find no violation, especially considering the failure of defendant to demonstrate any prejudice.


The judgment of the trial court is AFFIRMED.


_____

**JOE G. RILEY, JUDGE**

CONCUR:


_____

**DAVID H. WELLES, JUDGE**



_____

**JERRY L. SMITH, JUDGE**

13