STATE of Tennessee, Appellee,

v.

**William Leon LEATH, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 18, 1987.

Permission to Appeal Denied by Supreme Court Feb. 1, 1988.

James H. Bostick, Asst. Public Defender, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Robert Conley, Asst. Atty. Gen., Nashville, for appellee.

**OPINION**

DWYER, Judge.

This represents an appeal as a matter of right by William Leon Leath from his conviction of bank robbery in the Shelby County Criminal Court. Appellant was sentenced as a Range II offender to 30 years in the State penitentiary with 20 years of said sentence to be served consecutively with that of a prior conviction. Appellant presents two issues for review.

ISSUE I. Whether the evidence is sufficient to support the conviction beyond a reasonable doubt.

The evidence adduced at trial was controverted. The State submits that on the morning of May 30, 1985 a branch of the National Bank of Commerce at Poplar and Highland in Memphis was held up by the appellant. On the morning in question, a bank teller, Ms. Birdie Fields, was robbed by a man who instructed her, "This is a stick-up, give me all of your money or I'll blow you away." Although the teller did not see a weapon, she did as the robber directed. The robber then fled on foot.

Ms. Fields and two other tellers were able to generally describe the robber. Ms. Fields later participated in a police lineup, but picked out someone other than the appellant. However, she stated that she was not certain of her choice.

Mary Beth Bailey, the teller working the drive-through window at the time of the robbery, saw the robber flee across the parking lot on foot. She noticed that the robber had a distinctive walk, "like sometimes you see an old person who's trying to run but they can't quite run...."

Two other witnesses testified about seeing the appellant on the day in question. James Sanders testified that he knew the appellant and that on the day of the robbery the appellant came into his service station. Mack McGill testified that he was performing maintenance work near the bank on the morning of the robbery. According to the witness, he observed a man and a woman driving around the parking lot around 10:00 a.m. A female, who looked to be about 35 years old, was driving and the passenger was the appellant. McGill later identified the appellant out of a police lineup.

Michael Bryan testified that he has known the appellant for 15 years. Appellant was married to his sister and later was convicted of killing her. Shortly after the robbery, Bryan saw a picture of the bank robber in the newspaper. He called the bank and asked to see more pictures of the hold-up. After viewing more pictures, Bryan was sure the robber was the appellant. Bryan also testified that his testimony was not the product of animosity.

Another witness, Sheila Jo Sullivan, observed a newspaper photograph of the bank robbery, recognized the appellant and notified the FBI. Ms. Sullivan testified that she had known the appellant for three years at the time of trial. Appellant and Ms. Sullivan's husband had worked together at the same gas station. She further testified that the appellant walks with a limp.

For the defense, Linda Leath testified that she is appellant's wife. She admitted to being a co-defendant in this matter and that she entered a guilty plea, not because she was in fact guilty, but because she had been promised probation. She testified that she and the appellant were living in Gainesville, Georgia on May 30, 1985 and were employed at a poultry factory. On cross-examination, the witness testified that appellant obtained employment under a false name and social security number and did not work between May 29 and June 4, 1985.

Three witnesses testified that the appellant and Mrs. Leath were living with them in public housing in Gainesville until they rented a trailer on June 1, 1985. All three witnesses testified they saw the Leaths on a daily basis.

The appellant alleged that several of the State's witnesses testified out of animosity towards him. He insisted that Mr. Sanders did not see him on May 30, 1985, but that the event he described took place on May 10, 1985. The appellant further insisted that he was in Georgia at the time of the bank robbery. He also acknowledged that his right ankle had been fused, and that when he tires, he tends to limp. On cross-examination, the appellant admitted he did not work from May 30, 1985 through June 3, 1985.

Appellant argues that the evidence adduced at trial was insufficient to support the conviction. He further implies that, in light of the controverted proof, a rational trier of fact could not find the elements of the crime charged beyond a reasonable doubt.

On appeal, a guilty verdict approved by the trial judge, accredits the testimony of the witnesses for the State. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). Where the sufficiency of evidence is challenged, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983); Rule 13(e), Tenn.R.App.P.

■ In the case *sub judice,* appellant was photographed while robbing the bank. He was identified from a newspaper photograph as the robber by two people who knew him, one of whom testified that appellant walks with a limp. A teller recalled that the robber walked with a limp. Appellant acknowledged he walks with a limp. An acquaintance of the appellant testified that the appellant was by his gas station on the day of the robbery. He was observed driving around the parking lot adjoining the bank on the morning in question by a witness who later picked appellant out of a lineup.

Appellant's wife maintained her innocence and claimed that she and her husband were in Georgia on the day of the robbery. However, she admitted that she had pled guilty as a co-defendant in this matter. Notwithstanding appellant's testimony that he was living and working in Georgia at the time of the robbery, appellant admitted on cross-examination that he was not at work on May 30, 1985 through June 3, 1985.

In short, in a light most favorable to the prosecution, a jury could and did find the elements of the crime charged beyond a reasonable doubt. The issue is without merit.

ISSUE II. Whether the trial court erred in refusing to allow appellant's counsel to cross-examine State's witnesses regarding the photograph of a person who robbed the same bank on July 2, 1985.

The record reveals that approximately one month following the indictment offense, the bank in question was again robbed. A photograph of this robber was used in the investigation of the instant offense. Appellant attempted to introduce the photograph at trial and cross-examine State's witnesses regarding this photo. The trial court, after reviewing evidence out of the presence of the jury, found that the two robberies were not related and that the appearance of the robbers was dissimilar.[1] Accordingly, the trial court ruled that the evidence was irrelevant.

Appellant argues that the photographs are similar and asserts the relevancy of the disallowed evidence. Appellant implies that the second robber committed the instant offense. Appellant further argues that his basic constitutional right of confrontation was denied him.

It is well established that the determination of the relevancy or probative value of evidence is within the trial court's discretion. *Gray v. State,* 191 Tenn. 526, 235 S.W.2d 20 (1950). The Tennessee Supreme Court has adopted the definition of relevance contained in Rule 401 of the Federal Rules of Evidence:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the act more probable or less probable than it would be without the evidence.

*State v. Banks,* 564 S.W.2d 947, 951 (Tenn. 1978).

■ In the matter before us, the court examined the evidence in camera, heard the testimony of a witness who deemed the photograph of the second robber to appear dissimilar from the appellant, and ruled the evidence to be without probative value. We find no abuse of discretion by the trial court. Secondly, we have carefully reviewed the record and particularly the photographs in question[2] and find there to be no substantial similarity in the appearance of the two robbers as to compel this Court to overrule the trial court's determination.

1. We note that the State concedes that the photograph of the second robber might have been probative had the two robbers closely resembled one another in appearance. We also note for the record that at the time of the second robbery, the appellant was already in police custody and could not have been the robber in the second hold-up.

2. Photographs taken of the bank robber of May 30, 1985 and of the robber on July 2, 1985.

Lastly, were we to assume, *arguendo*, that the trial court erred in ruling the evidence was lacking in probative value, in light of the overwhelming evidence before this Court of appellant's guilt, any error would be harmless. Rule 36(b) Tenn.R.App.P.

The issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

SCOTT, J., and LLOYD TATUM, Special Judge, concur.