IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION



**FILED**

**October 28, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,                )
                                   )    C.C.A. No. 01C01-9711-CC-00510
            Appellee,              )
                                   )    Giles County
v.                                 )
                                   )    Honorable Robert L. Jones, Judge
STEVE EDWARD HOUSTON,              )
                                   )    (Sale of Cocaine and Casual Exchange
            Appellant.             )     of Cocaine)


FOR THE APPELLANT:                      FOR THE APPELLEE:

Hershell D. Koger                       John Knox Walkup
131 North First Street                  Attorney General & Reporter
P. O. Box 1148                          425 Fifth Avenue, North
Pulaski, TN  38478                      Nashville, TN  37243-0493

                                        Daryl J. Brand
                                        Assistant Attorney General
                                        425 Fifth Avenue, North
                                        Nashville, TN  37243-0493

                                        T. Michael Bottoms
                                        District Attorney General
                                        P. O. Box 459
                                        Lawrenceburg, TN  38464-0459

                                        Stella L. Hargrove
                                        Assistant District Attorney General
                                        P. O. Box 459
                                        Lawrenceburg, TN  38464-0459

                                        Richard H. Dunavant
                                        Assistant District Attorney General
                                        P. O. Box 304
                                        Pulaski, TN  38478-0304


OPINION FILED: _____


AFFIRMED


L. T. LAFFERTY, SENIOR JUDGE

## O P I N I O N

The appellant, Steve E. Houston, referred herein as the defendant, appeals as of right from convictions for two counts of casual exchange of cocaine, a Class A misdemeanor, and two counts of sale of cocaine, a Class C felony, by a Giles County jury. At the sentencing hearing, the trial court imposed two 15-year sentences, as a career offender, to be served consecutively for the felony offenses and 11 months and 29 days to be served concurrently for the misdemeanors. In addition, the trial court ordered these two 15-year sentences to be served consecutively to an outstanding 13-year sentence resulting from prior convictions.

The appellant has presented two issues for appellate review: (1) whether the trial court erred in not severing the four offenses for trial, and (2) whether the trial court erred in not suppressing the March 22, 1995 taped conversation between the defendant, Kathy Fralix, and Agent Gilleland, or otherwise by not redacting those portions which were not directly related to the instant charges that related to prior bad acts of the defendant, inflammatory and/or prejudicial statements by Agent Gilleland and Kathy Fralix and other matters irrelevant and prejudicial.

After an appropriate review of the record in this cause, briefs of all parties, and the law, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

From January through September, 1995, the narcotics division of the Tennessee Bureau of Investigation conducted an undercover operation in Giles County and Maury County. Surveillance during this operation revealed the defendant's involvement in illegal drug activity. On January 13, 1995, Agent Maxey Gilleland equipped Kathy Fralix, an informant, with a transmitter and tape recorder. Fralix, along with the agent, drove her vehicle to the defendant's home on Sumpter Street in Pulaski to purchase an "eight ball"

2

of crack cocaine. After checking the license plate on a vehicle at the defendant's home, the vehicle was found to be registered to the defendant. Agent Gilleland gave Fralix $220 with which to buy the cocaine.

Kathy Fralix entered the defendant's home and emerged several minutes later having purchased ten rocks of crack cocaine. The recording of this transaction failed. However, the conversation between the agent and Fralix was recorded substantively giving the identity and description of the defendant, his residence, and his vehicle. The crime laboratory determined the substance to be 1.2 grams of cocaine.

The second incident occurred on February 16, 1995, under the same conditions, except this time Agent Gilleland drove his vehicle. Agent Gilleland and Kathy Fralix were wired with tape recorders and transmitters which succeeded in recording the entire transaction. Fralix went inside the defendant's home, and Agent Gilleland was instructed to move his vehicle from the front of the defendant's home. Agent Gilleland watched the defendant leave the house, go around the left side to retrieve the cocaine, and then re-enter the house. This time Fralix returned to the vehicle with seven rocks of crack cocaine. From the audiotape, the defendant was concerned with the location of the vehicle and wanted Agent Gilleland to drive off and return after the transaction was complete. Fralix paid the defendant $200 for the crack cocaine, which the crime laboratory determined to be cocaine weighing 0.8 grams.

On March 22, 1995, Agent Gilleland and Kathy Fralix attempted to buy $400 worth of cocaine from another individual, Demetri Perry, at a different location. During this transaction, Fralix paid this individual the money before receiving the cocaine. The individual left and was to return with the cocaine; however, the defendant appeared on the scene and entered into a conversation with Agent Gilleland and Fralix. This conversation was recorded. The principal substance of the conversation involved the discussion of drugs and, in particular, the defendant's desire to supply Gilleland and Fralix with cocaine. The defendant made various incriminating statements, however, no drug transaction

3

occurred during this occasion.

On March 23, 1995, Special Agent Mark Irwin met Kathy Fralix at the Wal-Mart in Pulaski. Ms. Fralix was equipped with a transmitter and recorder. Both Agent Irwin and Fralix proceeded to the defendant's home. Ms. Fralix entered the defendant's home, remained for a short period of time, and returned to the vehicle to assist in parking it elsewhere. She returned to the residence, but came out with instructions to park the car further away. She emerged from the defendant's home with nine rocks of crack cocaine, for which she had paid $200. The crime laboratory determined the cocaine to weigh 0.7 grams.

On March 31, 1995, Agent Irwin and Fralix again returned to the defendant's home and parked "up the road." After a short period of time, Fralix returned and gave Agent Irwin eleven rocks of crack cocaine for which she had paid the defendant $200. The crime laboratory determined the cocaine measured 0.6 grams.

At trial, each of the five recordings was played for the jury. The method of operation for each transaction revealed that upon arrival of the purchasing agent, the defendant exited his home, went around the left side of his house, retrieved the cocaine, and completed delivery of the cocaine for the agreed price. Without presenting any evidence, the defense rested.

## I. Severance of Counts

The defendant was charged by the Giles County grand jury in two indictments (one indictment contained three counts). Prior to trial and after a hearing at the request of the State, all cases were consolidated for trial. Thereupon, the defendant made a corresponding motion to sever all counts which the trial court denied. After the jury trial, the defendant was found guilty of two counts of casual exchange of cocaine on the dates

4

of January 13, 1995 and February 16, 1995, and two counts of sale of cocaine from the dates of March 23, 1995 and March 31, 1995.

The defendant contends this instant case does not fall under Tenn. R. Crim. P. 8(a) as mandatory joinder citing *State v. Dunning,* 762 S.W.2d 142 (Tenn. Crim. App. 1988). We agree with the defendant this is not a case of mandatory joinder under Rule 8(a). However, Tenn. R. Crim. P. 8(b) permits the trial court to utilize permissive joinder of offenses. Even the defendant concedes in his brief that "based upon the alleged offenses and the case summaries of each alleged offense in indictment 7424 . . . the State could have permissibly joined the cases pursuant to Rule 8(b), under the theory that the alleged offenses are of the same or similar character."

In *State v. Hoyt,* 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995), this court held that when offenses are permissively joined under Rule 8(b), the defendant is entitled to severance of those offenses unless (1) the offenses are a part of a common scheme or plan and (2) the evidence would be admissible at the trial of the others. *See also* Tenn. R. Crim. P. 8(b), 13(a), and 14(b)(1).

### A. Common Scheme or Plan

The first prong of Rule 14(b)(1), Tenn. R. Crim. P., requires the trial court to find a common scheme or plan. *Hoyt,* 928 S.W.2d at 943. To constitute a "common scheme or plan" as required by Tenn. R. Crim. P. 8(b) and 14(b)(1), the *modus operandi* of the offenses must be similar and must occur within a close proximity of time thereby negating any uncertainty that the offenses were committed by the same defendant. *State v. Peacock,* 638 S.W.2d 837, 840 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1982). To determine whether certain crimes fit into this category, "the test is not whether there was evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes." *Hoyt,* 928 S.W.2d at 943 (quoting *Young v. State,* 566

S.W.2d 895, 898 (Tenn. Crim. App. 1978)).

The defendant contends that his motion to sever should have been granted as of right because the State failed to carry the burden of proof with regard to the "common scheme or plan." In support of his claim, the defendant cites the cases of *State v. Adams,* 859 S.W.2d 359 (Tenn. Crim. App. 1992) and *Hardy v. State,* 519 S.W.2d 400 (Tenn. Crim. App. 1974). The defendant in *Adams* was charged with felony murder and two counts of armed robbery. One of the robberies took place at 2:30 a.m., and the other robbery which resulted in the felony murder charge took place two miles away at 3:50 a.m. *Adams*, 859 S.W.2d at 361. This court held that only the suggestion of shared motivation would not constitute a "common scheme or plan," and further stated "no physical evidence linked the cases together except the evidence that both crimes were committed by the same two persons." *Id.* at 362. Moreover, the court held that the failure to sever the cases did not require a new trial because the evidence of guilt was abundant. *Id.* at 363. The *Adams* case is completely distinguishable because the present case contains linking physical evidence beyond the defendant's commission of these four offenses.

Also, the defendant cites the case of *Hardy v. State,* 519 S.W.2d 400 (Tenn. Crim. App. 1974). The ruling in *Hardy* preceded the adoption of the Tennessee Rules of Criminal Procedure, which became effective July 13, 1978. As a result, the decision in *Hardy* has been limited in its application. *See Peacock,* 638 S.W.2d at 839.

This court has repeatedly acknowledged "common scheme or plans" involving drug transactions with similar factual patterns as the State cites in its brief. *See Charles "Ace" Barbee v. State,* Dyer County No. 02C01-9610-CC-00372, 1997 WL 399376 (Tenn. Crim. App., Jackson, July 16, 1997), *per. app. denied* (Tenn., Dec. 8, 1997) (involving same agent, same defendant, same transaction area, same controlled substance, and small amount of cocaine in four transactions). Although *Barbee* involved a post-conviction appeal, this court held the offenses fit a "common scheme or plan;" therefore, if counsel

6

had made a motion to sever, it would not have been successful. *See also*, *State v. Joseph Clyde Beard, Jr.,* Sullivan County No. 03C01-9502-CR-00044, 1996 WL 563893 (Tenn. Crim. App., Knoxville, Sept. 26, 1996), *per. app. denied* (Tenn., Feb. 3, 1997) (finding "common scheme" where same informant purchased similar amounts of cocaine from same defendant for same amount of money in same location although transactions occurred a month apart); *State v. Roger D. Pulley,* Wayne County No. 01C01-9501-CC-00013, 1995 WL 555060 (Tenn. Crim. App., Nashville, Sept. 20, 1995) (holding five offenses constituted "common scheme" occurring within eight weeks, involving same sequence of events, same informant, and procedures); *appeal after remand,* No. 01C01-9605-CC-00217, 1997 WL 438166 (Tenn. Crim. App, Nashville, July 31, 1997); *State v. Steve Mosley,* Dickson County No. 01C01-9211-CC-00345, 1993 WL 345542 (Tenn. Crim. App., Nashville, Sept. 9, 1993).

In the present case, the four indicted offenses transpired over an approximate ten-week period, with two transactions only eight days apart, each occurring at the defendant's home. All of the transactions involved the same controlled substance, approximately the same number of rocks with approximately the same weight, the same defendant, the same informant, and the same amount of money. Each time the defendant left his house and went around the left side to retrieve the cocaine. Moreover, each time the agent approached in his vehicle, under instructions of the defendant, the agent moved his vehicle further away from the house. The proof was essentially the same *modus operandi* in each offense, *i.e.,* close in time, location, and character. We conclude these four offenses constitute a "common scheme or plan" as contemplated under Tenn. R. Crim. P. 8(b) and 14(b)(1).

**B. Admissibility of Evidence of One at Other Trials**

The second prong required under Rule 14(b)(1) for joinder of offenses is that the evidence of one offense would be admissible upon the trial of the others. *Hoyt,* 928

S.W.2d at 944. This court held this prong was satisfied if the evidence would have been admissible under the provisions of Tenn. R. Evid. 404(b). *Id.* Generally, evidence of other crimes is not admissible to prove the defendant acted in conformity therewith, unless the trial court determines that a material issue exists to show identity, motive, intent, guilty knowledge, absence of mistake or inadvertence, and other material points. *Hoyt,* 928 S.W.2d at 944; *State v. Hallock,* 875 S.W. 2d 285, 291 (Tenn. Crim. App. 1993), *per. app. denied* (Tenn. 1994).

Here, the defendant does not dispute that he committed the other offenses, only that "none of the evidence of one case is relevant to any other case" under Tenn. R. Evid. 401, 402, and 403. Specifically, he argues that the introduction of evidence regarding the other offenses violates fundamental fairness regarding prior bad acts under Tenn. R. Evid. 404(b). The trial court, in a pretrial hearing, must weigh the evidence to determine if the probative value is outweighed by the prejudicial effect. Tenn. R. Evid. 404(b)(3). This court has held:

> Factors in weighing the probative value include the prosecution's need for the evidence, the likelihood the defendant committed the other crimes, and the degree of its relevance. The similarity of the acts make the probative value particularly significant. The distinctive design in the commission of a series of crimes may serve as the basis for either admitting evidence of the other crimes or having consolidated trials.

*State v. McKnight,* 900 S.W.2d 36, 51 (Tenn. Crim. App. 1994), *per. app. denied* (Tenn. 1995).

To comply with the requirements of Rule 14(b)(1), the trial court was required to conduct a hearing to determine if evidence of one offense is relevant to a material issue in the trial of the other offense and to determine whether the probative value of such evidence outweighs any prejudicial effect. In the present case, the trial court did not conduct such a hearing.[1] We elect to complete this analysis.

-----

[1]The trial court did conduct a hearing on the defendant's motion to sever, but the hearing minimally met Rule 404(b) requirements. The record does not reflect the trial court's ruling as to Rule 404(b), in that no evidence was presented, no finding was made as to a material matter, and no balancing test was completed.

The defendant does not contest the fact that he sold crack cocaine to the State's agents.  He defends the felony charges, however, upon grounds that his sales of cocaine were "casual exchange" rather than a designed sale as contemplated by Tenn. Code. Ann. 39-17-417(a)(3).  As such, the evidence of the other counts was relevant.  Each of the transactions were closely related with a distinctive design common among the four occurrences. The probative value of the evidence clearly outweighs the danger of unfair prejudice. *See Barbee,* Dyer County No. 02C01-9610-CC-00372 (holding evidence admissible as probative of both identity and guilty knowledge); *see also*, *Pulley,* Wayne County No. 01C01-9501-CC-00013; *State v. Wayne Hymes Richards,* Cumberland County No. 03C01-9503-CR-00102 (Tenn. Crim. App., Knoxville, July 8, 1996). Thus, we conclude the evidence of one offense would be admissible upon the trial of the others.

Furthermore, on appeal, the denial of the severance will not be overturned unless it appears the defendant was clearly prejudiced.  *State v. Barber,* 753 S.W.2d 659, 671 (Tenn.), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988); *State v. Coleman,* 619 S.W.2d 112, 116 (Tenn. 1981); *Parham v. State,* 885 S.W.2d 375, 383 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994).  The defendant has failed to demonstrate that he has been clearly prejudiced.

Therefore, we conclude the trial court properly granted the permissive joinder of offenses and properly denied the defendant's motion for severance.  This issue is without merit.

## II. Suppression of the Audiotape

In his second issue, the defendant challenges the admission of the audiotaped conversation of March 22, 1995 between Agent Gilleland, Fralix, and the defendant. Alternatively, the defendant argues the trial court erred by not redacting certain portions of this audiotaped conversation because the contested portions did not directly relate to any of the other charged offenses and would mislead and prejudice the jury.  In support

of this contention, the defendant relies upon Tenn. R. Evid. 404(b) and *State v. Tizard,* 897 S.W.2d 732, 734 (Tenn. Crim. App. 1994), in that the defendant had particular propensity or acted in conformity therewith in the stated offenses. The defendant contends that the introduction of this tape was not harmless error because in the two transactions preceding this conversation, the jury only convicted him of casual exchange of cocaine, and in the two transactions following this conversation the jury convicted him of felony sale of cocaine.

In ruling on the motion to suppress, the trial court found the defendant's statements regarding the $400 crack deals and stealing away money from his competitors were "plenty relevant and probative on the issue of casual exchange versus intent to engage in the kind of illicit business." The trial court overruled the motion to suppress the entire audiotape and a motion to redact on all but three sentences. However, on a subsequent motion to redact, the trial court granted the motion with regard to three statements contained in the audiotape: (1) the self-serving statement of Fralix, the informant, that "Peps [defendant], a big time dealer here," (2) "Cops done got all my money man," and (3) "I've been in and out of jail man."

This particular audiotape recording stems from an unrelated drug transaction involving the purchase of cocaine by Agent Gilleland and Fralix from another individual at that individual's residence. Fralix had "fronted" the individual $400 for cocaine, and the individual left to secure the cocaine. While awaiting the return of the individual, the defendant appeared at the residence and introduced himself to the agent, Gilleland. Agent Gilleland explained the individual had left with the money to which the defendant stated, "Four hundred -- goodness -- that would have made my day -- man -- you would have got your dope man." The agent then asked for the price of an "eight ball" and the defendant stated, "All I got is . . . two hundred dollars worth . . . if I can get rid of that . . . I'm fixing to go get some real big stuff . . . I have to get rid of that . . . I'm trying to start up now." Still frustrated over his loss of the sale, the defendant continued, "Damn man . . . four hundred

10

. . . you could have come and seen me man . . . Hell, you and I need to talk about . . . I need to know when you're coming around." From there, the defendant wanted to know how often the agent came into town to purchase cocaine so that he could be his regular supplier. Speaking to the agent, the defendant said, "Man you trying to make it [drug dealing] . . . I thought you was smoking like hell man."

The relevance of evidence is determined by the trial court pursuant to Tenn. R. Evid. 401 and will not be overturned without an abuse of discretion. *State v. Forbes,* 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995); *State v. Leath,* 744 S.W.2d 591, 593 (Tenn. Crim. App. 1987). A declaration of intent to engage in criminal conduct is relevant and admissible, *State v. Woods,* 806 S.W.2d 205, 209 (Tenn. Crim. App. 1990), *cert. denied,* 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992), unless there is no apparent relationship between this statement and the subsequent crime. The defendant's statements on this day reflect his attitude of intent to engage in the illicit drug trade and, as a matter of fact, did so the next day and eight days later. We conclude the redacted version of the tape was relevant and admissible as the trial court properly found and was not unduly prejudicial, confusing, or misleading to the jury. This issue is without merit.

Thus, the judgment of the trial court is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE

11