**STATE of Tennessee, Appellee,**

v.

**Aubrey A. STODDARD, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 23, 1994.

Thomas E. Hansom and Debra L. Fessenden, Memphis, for Appellant.

Charles W. Burson, Attorney General and Reporter, Rebecca L. Gundt, Assistant Attorney General, Criminal Justice Division, Nashville, John W. Pierotti, District Attorney General, Phillip Gerald Harris, Asst. Dist. Attorney General, Memphis, for Appellee.

## OPINION

SUMMERS, Judge.

Appellant, Aubrey A. Stoddard, appeals as of right from a judgment entered by the Shelby County Criminal Court approving a jury verdict of guilt as to possession of cocaine and possession of marijuana. The trial court fined appellant $1,500.00 for each conviction. After the court overruled his motion for new trial, appellant filed a notice of appeal contesting the following issues:

### I.

Whether the trial court erred in denying appellant's motion to suppress evidence obtained during the search of his squad car and the suitcase contained therein.

### II.

Whether the evidence was sufficient to support appellant's conviction of possession of cocaine and possession of marijuana.

### III.

Whether the trial court erred in granting the state's motion in limine.

### IV.

Whether the trial court erred in refusing to instruct the jury as to appellant's requested instruction.

We find appellant's final issue to be meritorious. We therefore reverse and remand this case for a new trial.

### FACTS

In January of 1991, appellant was employed by the Memphis Police Department. He worked the 3:00 p.m. to 11:00 p.m. shift in the East Precinct. On January 14, the police department security squad contacted appellant. The squad was investigating allegations that he had taken photographs of a nude woman on his squad car in violation of the department's regulation regarding the unauthorized use of departmental equipment. Appellant met with Deputy Chief Walter Winfrey, at the time, commander of the security squad. After speaking with appellant, Winfrey decided to inventory his squad car to search for additional photographs. Appellant and three other officers accompanied Winfrey to the vehicle to begin the search. The passenger's side door of the car was opened and officers removed an equipment box in the front seat. Winfrey stated that he went through the box looking for additional pictures, but only found equipment issued by the police department. Winfrey then asked appellant whether he had anything in his trunk and appellant indicated a suitcase. After receiving the keys from appellant, Winfrey opened the trunk and located the suitcase inside. He unzipped a compartment on its outside portion and felt something that was taped to the top part of the compartment. He pulled out a taped box that contained a condom. While pulling the rest of the tape loose, a small bag fell from the same area. Winfrey asked appellant what was in the bag and appellant responded that it looked like cocaine. At that point, the investigation stopped so that an additional statement could be taken from appellant. Two hours later, appellant's squad car was inventoried and investigators found a bag of marijuana taped in the same area of the suitcase.

Winfrey testified that most of the officers in the department carry suitcases such as

appellant's. These suitcases are used to carry their equipment. He further testified that he is familiar with the rules and procedures of the uniform patrol division. He stated that officers have a responsibility to inspect their assigned squad cars at the beginning and the end of their shifts to insure that there are no weapons or contraband left by previous occupants. If an officer finds contraband in his car he is to place it in a property envelope, take it to his precinct and inform his supervisor. The officer should then write a memo and "tag" the contraband into the property room. Winfrey stressed that contraband discovered in such an instance should be immediately tagged even if is found at the end of a shift. If the item is not contraband then the procedure is not so strict.

The parties stipulated that the substances found in appellant's suitcase were marijuana and cocaine.

The defense also called Deputy Winfrey as a witness. He admitted that the Memphis Police Department Policy and Procedures Manual contains no instructions on immediately advising a supervisor when contraband is found. He noted, however, that many standard operating procedures are not found in the manual. Winfrey stated that he has recently worked in the North, East, and West Precincts, and at all of those precincts an officer immediately contacts a supervisor upon finding contraband. He further testified that there is no place on an officer's log sheet to indicate the inspection of a squad car. However, assuming appellant found contraband in his vehicle after going off duty, there should have been a notation on his log sheet if standard operating procedures were followed.

Appellant testified in his own behalf. On January 13, 1991, he was assigned car no. 559. At approximately 8:30 that evening he assisted another officer at a traffic stop. Two individuals whom he had not searched were placed in the back seat of his squad car. Appellant placed two other individuals in his vehicle as the result of traffic stops that evening. At the end of his shift he checked the rear seat of his squad car and found two plastic "seals" containing what he believed to be contraband and a sealed condom. He stated that the items in question were not in his vehicle when he began his shift. He further stated that when an officer finds property he should tag it into the property room, whether it is contraband or otherwise, and write a memo to that effect. The only property room is located at 201 Poplar Avenue in downtown Memphis. Appellant had never heard of the unwritten policy of contacting your supervisor upon finding contraband.

Appellant testified that when he found the contraband he noticed that one of the items was leaking and taped it shut. He then taped the contraband to a compartment in his suitcase so that it would not get mixed up with his equipment. He stated that on his next shift he planned on bringing the contraband downtown, and that he did not do so immediately because he did not have a suspect under arrest or a case to attach to it. On January 14, appellant arrived at work at 3:00 p.m. He stated he had no occasion to go to the property room before being called by the security squad. On cross-examination, appellant testified that he could have called his wife and told her that he would be late; however, it was a far drive from the East Precinct to the downtown property room and his wife did not care for the late hours that he worked.

The next witness to testify was Officer Stan Ferguson. He stated that the appellant assisted him on January 13, 1991, at a traffic stop and that two persons were placed in the back of appellant's squad car. He testified that there was no written policy regarding found property or contraband.

Officer William Oeding testified that found property is to be tagged into the property room and a memo written up concerning it. He was unaware of any procedure requiring that this be done within a particular period of time. He testified he would take property to the property room as time allowed.

## I.

In his first issue, appellant contends that the court erred in denying his motion to suppress evidence obtained during the search

of his squad car and the suitcase contained therein.

■ The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures...." The strictures of the Fourth Amendment are applied to the states through the Fourteenth Amendment. Searches and seizures by government employers or supervisors of the private property of their employees are subject to these constitutional restraints. *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987); *State v. Francisco,* 790 S.W.2d 543, 545 (Tenn.Crim.App.1989).

■ To establish that a defendant's Fourth Amendment rights have been implicated, it must be shown that the state infringed upon "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). In determining whether an individual's expectation of privacy is reasonable, no single factor is determinative. *Rakas v. Illinois,* 439 U.S. 128, 152, 99 S.Ct. 421, 435, 58 L.Ed.2d 387 (1978). Moreover, the reasonableness of an expectation of privacy differs according to the context in which a search and seizure takes place. *O'Connor,* 480 U.S. at 715, 107 S.Ct. at 1496. As the Supreme Court in *O'Connor* noted:

> The operational realities of the workplace ... may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official. Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation.... The employee's expectation of privacy must be assessed in the context of the employment relation.

*Id.* at 717, 107 S.Ct. at 1497 (citations omitted). The Court in *O'Connor* concluded that due to the various work environments in the public sector the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. *Id.* at 718, 107 S.Ct. at 1498.

In the present case, the evidence revealed that appellant owned the suitcase searched by his superiors. At the time of the search, the suitcase was located in the trunk of a squad car belonging to the Memphis Police Department and assigned to appellant that day. A suitcase such as appellant's, commonly referred to as a "brain bag," is often used by officers to carry their equipment. At the motion to suppress, Eddie Adair, in charge of the uniformed patrol division at the time of the incident in question, stated that he issued a memorandum recommending that precinct commanders give verbal instructions concerning inspections of an officer's person, uniform, equipment, desk, locker, and vehicle. Adair stated that these instructions were verbally communicated at roll call to officers sometime before the policy went into effect in July of 1990. He admitted that the inspection instructions had not become a part of the department's official manual, but stated that the policy was to be incorporated in the manual at a later time. Adair could not verify whether appellant had been personally informed of the search policy.

Deputy Walter Winfrey testified that based upon appellant's inability to say whether he had additional photographs in his possession, he decided to conduct an inventory search of his squad car. When appellant objected to the search, Winfrey asked him whether he was aware that departmental policy indicated that anything placed in a squad car cannot be construed as personal and is subject to inspection. Appellant responded that he was not aware of the policy. Winfrey stated that when he opened the vehicle's trunk and found the suitcase he asked appellant whether it contained police equipment and appellant responded affirmatively.

Appellant denied being asked about the contents of his suitcase. In addition, he stated that he was not familiar with the oral search policy mentioned by Winfrey and Adair.

■ We conclude that appellant had no reasonable expectation of privacy. His suitcase was located in a vehicle belonging to the

Memphis Police Department and contained equipment issued by the department. Testimony reveals that an oral policy had been communicated to officers concerning the search of their vehicles. Although appellant denies any knowledge of such a policy, his subjective expectation of privacy alone does not justify reasonableness. The existence of an oral policy regarding inspections is sufficient to validate the search of the squad car and the suitcase. We therefore find that the trial court was correct in denying appellant's motion to suppress.

This issue is without merit.

## II.

In his next issue, appellant contends that the evidence was insufficient to convict him of unlawful possession of marijuana and cocaine.

■ In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

■ Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Shef-*

*field,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978).

■ We find the evidence sufficient to convict appellant of unlawful possession of cocaine and marijuana. The jury obviously accredited the testimony of the state's witness in this matter.

## III.

Appellant next contends that the trial court erred in prohibiting him from presenting evidence regarding the results of a drug test.

Appellant's position is that the results of the test are relevant in light of his defense; namely, that he had possession of the drugs because he found them in the course of his duties and had not yet had the opportunity to take them to the property room. He argues that a negative drug test would have the tendency to make his position more probable. The state disagrees.

■ Rule 401 of the Tennessee Rules of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Commission Comments provide that the "test for admissibility is a lenient one." The determination of relevance or the probative value of the evidence is within the sound discretion of the trial court. *State v. Leath,* 744 S.W.2d 591, 593 (Tenn.Crim.App.1987).

■ T.C.A. § 39–17–418(a) provides that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance...." In the present case, appellant admits to being in possession of drugs. However, he contends that he found the drugs in the back of his squad car and placed them in his suitcase for safekeeping until he could take them to the police evidence room.

Due to the self-ascribed leniency of Rule 401, we tend to agree that the drug test was relevant. However, the probative value of this evidence is obviously slight and does not amount to prejudicial error. We therefore

find that any error in not admitting the drug screen into evidence to be harmless.

This issue is without merit.

### IV.

In his final issue, appellant argues that the trial court erred in refusing his special request to the jury. The state submits that appellant's requested charge was an inaccurate statement of the law; hence, no error resulted in the court's refusal to give the instruction. *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn.Crim.App.1986).

After charging the jury, the judge asked whether either party had a request for special instructions. Appellant's attorney then made the following request:

> Your Honor, for the purposes of the record and under the definition given as to what possession—unlawful possession is, and intent, I would ask the Court at this time to instruct the jury that Officer Stoddard [appellant] may have had possession as a law enforcement officer, that is physical or constructive possession, but he would be required as a law enforcement officer to tag it and take it to the property room. The mere possession in his case would not fall under this statute as defined. Because, you've defined the knowingly and intentionally part of the statute.

The court overruled appellant's request without comment.

Pursuant to T.C.A. § 53–11–410(c), no liability is imposed under Title 39, Chapter 17, Part 4 when an officer is engaged in the lawful performance of his duties. Furthermore, for possession of a controlled substance to be lawful, possession "must be incident to, not merely contemporaneous with," an officer's duties. *State v. Francisco*, 790 S.W.2d 543, 546 (Tenn.Crim.App.1989).

A trial court has the duty to give a complete charge of the applicable law to the facts of the case and the defendant has the right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the court. *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn.1975); *State v. Burkley*, 804 S.W.2d 458, 461 (Tenn.Crim.App.

1990). A trial court may refuse a special request where the jury charge as given fully and fairly states the applicable law. *State v. Middlebrooks*, 840 S.W.2d 317, 335 (Tenn. 1992).

In the present case, the trial court gave no instructions concerning when it is lawful for an officer to be in possession of a controlled substance. We find this to be prejudicial error. Instructions on this issue were crucial to appellant's defense. The evidence in this case, while sufficient, was not overwhelming, and T.C.A. § 53–11–410(c) provided a lawful explanation for appellant's conduct. Without instructions to this effect, the jury was left with little choice but to convict.

As to the state's contention that appellant's requested instruction was an inaccurate statement of the law, we agree. However, we believe that even without a proper request, instruction by the court was required. This case does not involve mere meagerness in the jury charge, rather it touches upon an issue "fundamental to the defense and essential to a fair trial." *Poe v. State*, 370 S.W.2d 488, 491 (Tenn.1963). By failing to charge the jury concerning when it is lawful for an officer to possess a controlled substance, the court denied appellant his right to have "a complete charge of the law applicable to the facts of the case." *Burkley*, 804 S.W.2d at 462 (quoting *Thompson*, 519 S.W.2d at 792).

### HOLDING

Because of the error committed in failing to properly instruct the jury, the judgment of the trial court is reversed and the case remanded for a new trial consistent with this opinion.

BIRCH and PEAY, JJ., concur.