# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## FEBRUARY 1998 SESSION



FILED

May 28, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9703-CC-00100 |
| | ) | |
| vs. | ) | Giles County |
| | ) | |
| WILLIAM RONALD JORDAN, | ) | Hon. William B. Cain, Judge |
| | ) | |
| Appellant. | ) | (Attempted Robbery, DUI) |

FOR THE APPELLANT:

**SHARA ANN FLACY** (at trial and on appeal)
District Public Defender

**WILLIAM C. BRIGHT**
Asst. District Public Defender
P.O. Box 1208
Pulaski, TN  38478-1208

**GREGORY D. SMITH** (on appeal)
Attorney at Law
One Public Sq., Ste. 321
Clarksville, TN  37040

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DARYL J. BRAND**
Asst. Attorney General
425 Fifth Ave. North
Cordell Hull Bldg., 2d Floor
Nashville, TN  37243-0493

**T. MICHAEL BOTTOMS**
District Attorney General

**RICHARD H. DUNAVANT**
Asst. District Attorney General
P.O. Box 304
Pulaski, TN  38478-0304

OPINION FILED:_____

**AFFIRMED**

CURWOOD WITT, JUDGE

## OPINION

The defendant, William Ronald Jordan, appeals following his convictions of attempted robbery and driving under the influence. He received his convictions in the Giles County Circuit Court after a jury trial. He is presently incarcerated in the Department of Correction serving his effective six year sentence consecutively to his sentence for a previous conviction. In this direct appeal, Jordan claims that the trial court erroneously failed to instruct the jury on the affirmative defense of renunciation and that he was denied a speedy trial. Having reviewed the briefs and arguments of the parties, the record, and the applicable law, we find no reversible error and affirm the judgment of the trial court.

At trial, the state presented the testimony of Billy Kennedy, a loan officer of the Bank of Frankewing. On May 23, 1994, one of the tellers escorted the defendant to Kennedy's office. The defendant inquired about obtaining a loan, and Kennedy filled out a loan application for the defendant and said he would have an answer the following day. During his encounter with the defendant, Kennedy smelled alcohol. The defendant left Kennedy's office and started across the bank lobby Kennedy saw the defendant get a piece of paper out of his pocket then proceed to a teller window. The defendant stood at the teller window for a few minutes, then left the bank. Thereafter, Kennedy learned from the teller that the defendant had given her "a holdup note" and observed the defendant drive away in a blue Ford Escort station wagon. He obtained the license plate number and provided this information to law enforcement. Kennedy found a piece of that note where the defendant's car had been parked.

Sue Coggins testified the defendant came to her teller window and gave her a folded up note. She opened the note, and it said the defendant wanted money and would kill her if she did not cooperate. The note scared Coggins;

**2**

nevertheless, she said she did not "have any." The defendant said, "Don't have any what?" Coggins told the defendant he would have to see one of the loan officers. She either gave the note back to the defendant or laid it down, and the defendant took it and walked out of the bank. Coggins smelled alcohol on the defendant.

Deputy Kyle Helton of the Giles County Sheriff's department apprehended the defendant about 45 minutes after the attempted robbery. At the time Helton stopped the defendant, Jordan was on a private road headed toward a public roadway. Helton noticed a strong smell of alcohol on the defendant's breath and observed that the defendant was unsteady on his feet. Jordan was unable to successfully complete two field sobriety tests. Thereafter, Jordan registered .22 on an intoximeter test.

Special Agent Robert Childs of the FBI and Investigator Michael Chapman of the Giles County Sheriff's Department interviewed the defendant. On May 24, 1994, Jordan told Agent Childs and Investigator Chapman that he had attended a picnic at a rock quarry two days earlier. The next day, which was the day of the attempted robbery, he returned to the rock quarry and drank whiskey and beer with the quarry owner, Steve Houston. The defendant was "wild on booze" and could not remember clearly. He claimed to be an alcoholic with memory loss. However, he told Chapman and Childs that sometime in the afternoon he went to the Bank of Frankewing and applied for a loan. He had no recollection of the attempted robbery or the robbery note. He did not recall talking with anyone other than a loan officer.

Agent Childs spoke with the defendant a second time, on June 2, 1994. During the time between April 24 and May 2, the defendant conferred with counsel but requested the conference with Agent Childs that occurred on May 2.

3

Jordan claimed that he had known Steve Houston in his past. He and Houston were becoming reacquainted around May 23. On the day of the attempted robbery Houston and Jordan were drinking at the rock quarry. Jordan told Houston about spending time in jail for bank robbery. Houston did not believe this, so Jordan went to his car and wrote a note like the one he had used in robbing a bank in Nashville. The note said, "This is a robbery. Give me all your bills. I don't want to see no dye bomb or see you push no alarm or I'll kill you. You now have 15 seconds." Jordan messed up while writing this note and threw it in the quarry. He borrowed a piece of paper and wrote another note. He showed it to Houston then put it in his pocket. Later a man and woman at the quarry whose names the defendant did not recall went with the defendant to the bank. The man drove the defendant's car, and the woman followed in another car. The man had something to do, and the couple left the defendant and his car at the bank. The defendant went inside the bank and talked with the loan officer. Afterwards, he approached a teller and asked her for a roll of quarters. He had a $10 bill in the same pocket as the robbery note he had shown Houston, and he mistakenly gave the teller the note instead of the $10 bill. When the defendant realized what he had done, he snatched the note away from the teller and left the bank. On his way back to the quarry, he tore up the note and threw it out the window after he turned off the highway. The defendant claimed a piece of the first robbery note must have fallen out of the car when he exited the car at the bank.

Agent Childs testified that he not been able to locate "Steve Houston." He had, however, interviewed Houston Lewis Smith, the owner of the rock quarry.

Investigator Michael Chapman recalled seeing the defendant in the jail lobby sitting by the intoximeter machine on May 23. He could tell the defendant had been drinking, although the defendant appeared coherent.

4

Houston Lewis Smith testified for the prosecution. He saw the defendant on the day of the attempted robbery and the two previous days. The defendant was drinking on May 24. Smith noticed that the defendant left the rock quarry in the afternoon in his vehicle, and he returned about 20 to 30 minutes later. Smith heard that the bank had been robbed by an individual driving a car like the defendant's, and he called the Sheriff's Department to report the defendant's presence on his property. In stark contradiction to the defendant's statement, Smith said the defendant never told him about a robbery in Nashville or showed him a robbery note.

The defendant did not testify and offered as his only witness Carolyn Sue Watson, a teller at the Bank of Frankewing. She recalled the defendant coming into the bank asking to speak with a loan officer. She could smell liquor on his breath, and he was mumbling. She took him to Mr. Kennedy's office. Later, when Jordan left Kennedy's office, Watson saw him stop and look for something in his pocket or billfold. He took out something white. As he was standing at Coggins' teller window, she heard him say "You don't have any what?" or something similar. She did not hear Jordan ask Coggins for a roll of quarters. Watson also did not see any physically threatening behavior from the defendant, such as display of a weapon or grabbing Coggins.

The court denied the defendant's requested instruction on the defense of renunciation as to the attempted robbery charge. Thereafter, the jury returned guilty verdicts on both the DUI and attempted robbery charges.

I

First, Jordan claims the trial court should have given his requested instruction on renunciation. In support of his argument, he points to the fact that

5

when Coggins told him she had no money, he "quietly left" the bank rather than proceeding further. The state counters that Jordan failed to fairly raise the issue by presenting any proof of renunciation and that, therefore, the court had no obligation to submit a renunciation instruction. Specifically, the state claims the defendant's act of leaving when he failed to complete the act of robbery is insufficient renunciation of his crime.

Renunciation is an affirmative defense. Tenn. Code Ann. § 39-12-104 (1997). In order for a defendant to avail himself of an affirmative defense at trial, he must "fairly raise" it, Tenn. Code Ann. § 39-11-204(d) (1997), and he must establish it by a preponderance of the evidence. Tenn. Code Ann. § 39-12-104, Sentencing Comm'n Comments (1997). But see State v. Jackson, 946 S.W.2d 329, 332 (Tenn. Crim. App. 1996) (renunciation must be raised by a preponderance of the evidence) (emphasis added) (Smith, J., concurring), perm. app. denied (Tenn. 1997). In making its determination whether an affirmative defense such as renunciation has been "fairly raised" by the evidence and therefore requires the appropriate jury instructions, see Poe v. State, 212 Tenn. 413, 370 S.W.2d 488 (1963), the trial court "must assess the defendant's position without ascertaining its truthfulness or the weight to which it might be entitled." State v. Ivy, 868 S.W.2d 724, 726 (Tenn. Crim. App. 1993) (citations omitted); see also State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993); State v. Dorie Miller Currin, No. 02C01-9201-CC-00018, slip op. at 7 (Tenn. Crim. App., Jackson, Aug. 26, 1992).

In pertinent part, renunciation "is an affirmative defense to a charge of criminal attempt. . . [where the defendant], after committing the criminal attempt . . . prevented the successful commission of the offense attempted . . . under circumstances manifesting a complete and voluntary renunciation of the [defendant's] criminal purpose." Tenn. Code Ann. § 39-12-104 (1997). The

6

Sentencing Commission Comments further illustrate the situation in which the defense will apply: (1) the defendant must prevent successful completion of the ultimate offense, and (2) he must voluntarily renounce the criminal purpose. Tenn. Code Ann. § 39-12-104, Sentencing Comm'n Comments (1997).

The defendant's second statement provides proof of each element of renunciation. The defendant is charged with criminal attempt, one of the crimes to which the defense applies. There is evidence the defendant prevented the successful completion of the crime attempted and that he did so under circumstances manifesting his complete and voluntary renunciation of his criminal purpose. According to Agent Childs's testimony, the defendant stated that he accidentally gave Teller Coggins the robbery note instead of a $10 bill. When the defendant realized what he had done, he panicked, snatched the note and left the bank. Viewing this evidence without regard to its apparent veracity or its proper weight, it fairly raises the defense of renunciation.[1] Objectively, this evidence might be used by a jury to determine that the defendant thwarted his attempted robbery by grabbing the note and leaving, thereby preventing successful completion of the offense, and further, his actions were voluntary in repudiating the attempted robbery. Cf. Jackson, 946 S.W.2d at 332 (jury properly instructed on renunciation where defendant stabbed his girlfriend and waited for her to die, but then changed his course of action and summoned medical help for her) (Smith, J., concurring), perm. app. denied (Tenn. 1997).

We are not unmindful that the defendant's statement from which this

---

[1]In so holding, we reject the state's argument that the defendant's act of merely leaving because he failed to complete the offense was insufficient renunciation. On the contrary, the evidence favoring the defendant is that he did more than simply leave the bank. He claims he snatched the robbery note from Teller Coggins, which in the light most favorable to him could be interpreted as an affirmative disavowal of the crime.

version of events comes is inconsistent with his previous statement, wherein he claimed to have no memory of any events at the bank other than seeing the loan officer. Further, the testimony of the witnesses is inconsistent with the defendant's statement as recounted by Agent Childs. Nevertheless, we are bound to follow the law and hold that the proof "fairly raised" the affirmative offense of renunciation.

Additionally, although the issue was not addressed by the trial court or raised by the parties on appeal, we notice that the facts presented at trial also "fairly raise" the general defense of mistake of fact. Mistake of fact is a defense if it "negates the culpable mental state of the charged offense." Tenn. Code Ann. § 39-11-502 (1997). In the case at bar, the defendant's evidence which we have held "fairly raised" the defense of renunciation likewise fairly raises the defense of mistake of fact. Specifically, Jordan claimed in his second statement to have accidentally given the robbery note, rather than a $10 bill, to Teller Coggins. If the facts are as he alleged, they would negate the culpable mental state necessary for attempted robbery.

When a general defense is "fairly raised," the state must disprove its applicability beyond a reasonable doubt. Tenn. Code Ann. §§ 39-11-203(c), (d), -201(a)(3) (1997); State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). The trial court has the duty to give the jury a complete charge of the applicable law as to "every issue of fact raised by the evidence and material to [the] defense[.]" State v. Stoddard, 909 S.W.2d 454, 460 (Tenn. Crim. App. 1994); see, e.g., Poe, 212 Tenn. at 420, 370 S.W.2d at 491.

Having found error in the trial court's failure to instruct the jury on renunciation and the general defense of mistake, we turn to the issue of whether these errors require reversal. We are convinced that no rational jury could conclude

**8**

by a preponderance of the evidence that the defendant renounced his crime. See Tenn. Code Ann. § 39-11-204(e) (1997). Further, we believe the only conclusion a rational jury could draw from the totality of the proof is that the state disproved any mistake of fact defense beyond a reasonable doubt. The defendant's statement in which he sets forth his version of events is inconsistent with his previous statement, wherein he claimed to have no memory of any events at the bank other than seeing the loan officer. The testimony of each and every witness is inconsistent in some material respect to the defendant's second statement. Moreover, the trial court's failure to instruct on either renunciation or mistake does not affirmatively appear to have affected the result of the trial. As such, the trial court's failure to give the instructions was harmless error beyond a reasonable doubt. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a); cf. State v. Manning, 500 S.W.2d 913 (Tenn. 1973) (failure to give alibi instruction was, at worst, harmless error in face of the state's strong proof of defendant's guilt as compared with defendant's uncorroborated alibi evidence).

## II

In the remaining issue, Jordan claims he was denied his right to a speedy trial. The United States and Tennessee constitutions guarantee the criminal defendant the right to a speedy trial. U.S. Const. amends. XI and XIV; Tenn. Const. art. I, § 9; State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997); State v. Jefferson, 938 S.W.2d 1, 11 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996). The right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101 (1997). In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who as been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial . . . ." Tenn. R. Crim. P. 48(b).

Neither the constitutional provisions, the statute nor the rule defines the period of time in which the accused must be brought to trial or the case dismissed, or the precise point at which the clock starts to run. The United States Supreme Court has held that "no speedy trial rights arise until after formal accusation, either by arrest or by grand jury action." United States v. Marion, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971). Recently, the Tennessee Supreme Court decided that the issuance of an arrest warrant, by itself, is not enough to trigger the protection of the Sixth Amendment right to a speedy trial. Utley, 956 S.W.2d at 493. Either a formal grand jury action or the actual restraints of an arrest are required. Utley, 956 S.W.2d at 493.[2]

When an accused seeks the dismissal of a prosecution based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial."[3] Jefferson, 938 S.W.2d at 12 (citing Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). The length of the delay is dependent upon the peculiar circumstances of each case, and the delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. Barker, 407 U.S. at 530-31, 92 S. Ct. at 2193. A delay of one year or longer marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. Utley, 956 S.W.2d at 494; Doggett,

---

[2]Presumably, although it is not clear in Utley, an arrest alone will not trigger an accused's speedy trial rights. As we understand Utley, neither an arrest nor an arrest warrant is sufficient by itself. An arrest warrant must issue and the restraints of an arrest must be imposed before the speedy trial clock begins to tick. See Utley, 956 S.W.2d at 494 (right triggered when accused was served with the warrant and arrested).

[3]The term "presumptively prejudicial" does not imply that the defendant is automatically entitled to relief. Rather, it refers to a delay sufficiently egregious to require analysis under the balancing test of Barker v. Wingo, 407 U.S. 524, 92 S. Ct. 2182 (1972). See Utley, 956 S.W.2d at 494.

505 U.S. at 652, n.1, 112 S. Ct. at 2691, n.1; <u>see also</u> <u>State v. Ernest Vickers, III,</u> No. 02C01-9609-CC-00313, slip op. at 7 (Tenn. Crim. App., Jackson, July 3, 1997), <u>perm. app. denied</u> (Tenn. 1998); <u>State v. Terron Bledsoe,</u> No. 02C01-9508-CC-00226, slip op. at 3 (Tenn. Crim. App., Jackson, July 3, 1997), <u>perm. app. denied</u> (Tenn. 1998).

If this threshold is crossed, a balancing test determines the merits of the speedy trial issue. In <u>State v. Bishop</u>, 493 S.W.2d 81, 83-85 (Tenn. 1973), our supreme court recognized and adopted the balancing test set forth in <u>Barker v. Wingo</u>. The four factors which must be balanced are (1) the length of the delay, (2) the reasons for the delay, (3) the accused's assertion of the right to speedy trial, and (4) the prejudice resulting from the delay. <u>Barker</u>, 407 U.S. at 531, 92 S. Ct. at 2192; <u>Bishop</u>, 493 S.W.2d at 83-84.

In the case before us, the offenses occurred on May 23, 1994. The defendant was arrested on May 23, 1994 for DUI, and a second arrest warrant was issued the following day, May 24. Indictments were filed on August 1, 1994. The defendant filed a <u>pro se</u> motion for speedy trial on October 10, 1994.[4] He filed a <u>pro se</u> motion to dismiss based upon deprivation of his right to a speedy trial on March 13, 1995. Counsel was appointed shortly before arraignment in June 1995. The motion to dismiss was denied following a hearing on July 24, 1995. The trial began on August 8, 1995.

The delay of more than one year between arrest and trial in this case warrants application of the <u>Barker</u> balancing test. First, the length of the delay is

---

[4]At the hearing on the motion to dismiss, the defendant contended there was some delay in filing this motion. Through counsel, he claimed to have mailed the motion in September 1994.

long enough to trigger further analysis, but it is not egregious. We weigh this factor in favor of the state. Second, we weigh the reason for the delay slightly in favor of the defendant. The defendant claimed the delay was due to the state's negligence but offered no proof. The state offered no explanation for the delay. We glean from the record that the defendant was in state custody during the delay because his parole on an earlier offense had been revoked. Nevertheless, there is nothing of record except the delay itself which is probative of the state's negligence. Third, the defendant made an early assertion of his right to a speedy trial. This factor weighs in his favor. Finally, we decline to find prejudice from the delay.[5] The defendant was incarcerated for another conviction prior to his trial in this case. He alleged in his motions that he suffered administrative deprivations in the Department of Correction because of his pending charges; however, he elected to present no proof in that regard at the hearing. See Utley, 956 S.W.2d at 495. Further, he claimed an allegedly exculpatory witness died during the delay. According to the defendant's pleadings, this witness died in December 1994. We note that the defendant's crimes occurred approximately seven months earlier. Even if this case had not been delayed slightly, the witness would have in all likelihood been dead prior to trial. Additionally, Jordan presented no actual proof of this witness' death or substance of his anticipated testimony. We assign significant weight to the fourth Barker factor in favor of the state.

On balance, we agree with the trial court that the defendant is not entitled to dismissal of the charges against him due to a deprivation of his right to a speedy trial.

In summary, we affirm the judgment of the trial court.

---

[5]This is the most important of the four factors. State v. Wood, 924 S.W.2d 342, 348 (Tenn. 1996) (citations omitted).

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
WILLIAM M. BARKER, JUDGE