# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1997

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9605-CC-00223** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **FRANKLIN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. THOMAS W. GRAHAM** |
| **PAUL E. MATHIS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Sentencing)** |

FOR THE APPELLANT:

PHILIP A. CONDRA
District Public Defender
12th Judicial District
204 Betsy Pack Drive
Jasper, TN  37347

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

J. MICHAEL TAYLOR
District Attorney General

STEVEN M. BLOUNT
Assistant District Attorney
1 South Jefferson
Winchester, TN  37398

OPINION FILED _____

CONVICTION FOR RESISTING ARREST AFFIRMED;
CONVICTION FOR PUBLIC INTOXICATION REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Paul E. Mathis was convicted on July 20, 1995 by a jury in the Franklin County Circuit Court of one count of public intoxication and one count of resisting arrest. On September 12, 1995, the trial court conducted a sentencing hearing. Respecting the public intoxication conviction, Appellant received a suspended sentence of thirty days incarceration in the Franklin County jail, thirty days probation to begin immediately, and a $25.00 fine and costs. For the resisting arrest conviction, the trial court imposed a concurrent sentence of six months incarceration in the county jail, all of which was suspended save forty-eight hours incarceration. On this direct appeal, Appellant presents three issues for our consideration: (1) whether the trial court erred by failing to impanel the jury in compliance with Rule 24, TENN. R. CRIM. P.; (2) whether the trial court improperly responded to questions submitted by the jury during its deliberations; and (3) whether the evidence was insufficient to sustain Appellant's conviction for resisting arrest.

After a review of the record, we affirm the judgment of the trial court as to the conviction for resisting arrest. However, we must reverse the conviction for public intoxication and remand that case for a new trial.

## I. FACTUAL BACKGROUND

The proof shows that on August 19, 1994, Appellant consumed alcohol throughout the day and, therefore, did not want to drive. Appellant telephoned Mr. David Smith, his brother-in-law, and asked Smith to drive Appellant to a

friend's house. Appellant rode in the front passenger seat while his brother-in-law drove the automobile. Mr. Jason Steele[1] sat in the back seat.

Shortly before 11:00 P.M. on August 19, a dispatcher for the Winchester Police Department issued a bulletin alerting officers to watch for a vehicle whose description and license plate number matched those of the automobile in which Appellant was a passenger. The dispatcher informed officers that the vehicle was being operated erratically.

Officer Michael Doty of the Winchester Police Department testified that he received the dispatch while patrolling Highway 130 and North High Street. Officer Doty first encountered the white Mustang on North High Street. He followed and observed the car for approximately six to eight blocks. During this time, the automobile moved from its lane five times--three times to the inside lane and twice to the outside lane. After stopping the vehicle, Officer Doty approached the driver's side of the car and, upon smelling alcohol, asked the driver to step from the automobile and to produce his driving license. Officer Doty then called for backup, and Officers Greg Branch and John Stewart soon arrived at the scene. Officer Doty was involved primarily with the driver of the automobile and dealt only briefly with Appellant. Officer Doty testified, however, that Appellant smelled strongly of alcohol. Appellant sat quietly in the car and watched as Officer Doty tested Mr. Smith to determine whether or not Smith was intoxicated.

Appellant was still sitting in the front passenger seat of the vehicle when Officers Branch and Stewart arrived. Officer Branch approached the passenger side of the vehicle and asked Appellant to produce his license. Though Appellant reached into his pocket, he did not remove anything. Because the darkness

---

[1] Mr. David Smith, the driver of the vehicle, and Mr. Jason Steele, the back seat passenger, both were Appellant's co-defendants, and all three cases were joined for trial. However, the jury acquitted both Mr. Smith and Mr. Steele of the charged offenses.

prevented Officer Branch from seeing clearly inside the vehicle, he could not see the item Appellant attempted to retrieve from his pocket. Branch stated that he asked Appellant to step from the car because he detected a strong odor of alcohol. Officer Branch testified that upon being asked to step out of the automobile, Appellant asked the reason for the officer's request. Officer Branch informed Appellant that he needed to check Appellant both for the safety of the officers as well as for Appellant's own safety. Appellant refused this first request and said, "I'm not getting out of the car." Officer Branch then made two more requests that Appellant get out of the car, and Appellant again declined to comply. Officer Stewart approached the vehicle and observed Officer Branch make the third request of Appellant. Appellant again declined to exit the automobile after being asked for a fourth time to do so. Officer Branch testified that Officer Stewart attempted to open the door, and Branch reached into the vehicle to grab Appellant. When he did so, Appellant pulled the door closed, causing Branch to pull his arm from the car to prevent his fingers from being caught. Officer Stewart again pulled open the door, and Branch sprayed Appellant in the face with pepper spray. Officer Branch stated that Appellant became more combative after being sprayed. Stewart grabbed Appellant by his hair, pulled him from the vehicle, and pulled him to the ground. While Branch held Appellant on the ground by placing his knee between Appellant's shoulder blades, Officers Doty and Branch handcuffed Appellant.[2] Appellant continued to fight with the three police officers until the officers placed him into the patrol car.

---

[2] Officer Stewart testified that Officer Branch's fourth and final request to Appellant consisted of informing Appellant that if he did not voluntarily step out of the vehicle, Branch and Stewart would pull him out of the car. According to Officer Stewart, Appellant replied, "Go for it, big boy." Neither Officer Doty nor Officer Branch could recall Appellant making such a statement.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant challenges the sufficiency of the evidence to sustain his conviction for resisting arrest. This contention has no merit.

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d 776, 779. Finally, TENN. R. APP. P. 13(e) provides, "Findings of guilt in criminal

actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d 776, 780.

Tenn. Code Ann. § 39-16-602 provides in part:

> (a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer. . . from effecting a stop, frisk, halt, arrest, or search of any person, including the defendant, by using force against the law enforcement officer or another.
> (b) . . . [I]t is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful.

Tenn. Code Ann. §§ 39-16-602(a) and 39-16-602(b).

Tenn. Code Ann. § 39-11-106(a)(12) states: "`Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." The State bears the burden of proving every element of the offense beyond a reasonable doubt.

As this Court noted in State v. James Bradley, Tenn. Code Ann. § 39-16-602(b) reflects a policy decision by our legislature that "the illegality of an arrest alone will not justify an assault against officers attempting the arrest." C.C.A. No. 03C01-9408-CR-00298, slip op. 1, 5, Monroe County, (Tenn. Crim. App., Knoxville, February 13), cert denied, (Tenn. 1996). In Bradley, we held that the illegality of the police conduct is irrelevant to determining whether or not the accused was justified in refusing to comply with a law enforcement officer's commands or requests. Id.

First, Officer Branch asked Appellant to exit his vehicle. Officer Branch deemed this necessary in order to check Appellant both for his own safety as well as that of the officers. Moreover, Officer Branch noted Appellant's slurred speech and a strong odor of alcohol about him. Officer Branch also testified that Appellant was combative. Second, Appellant used force against Officers Branch,

Stewart, and Doty. Specifically, Appellant refused to step out of the automobile and pulled the door closed when Officer Stewart opened it. After Officer Branch sprayed Appellant with the stun solution, Appellant continued to struggle, kick, and fight. The foregoing amply demonstrates that Appellant used force to obstruct the officers from effectuating his arrest. See State v. Ronald David Lee, No. 03-C-01-9410-CR-00393, slip op. 1, 7, Cocke County, (Tenn. Crim. App., Knoxville, July 6, 1995) (holding that the evidence was sufficient to sustain the Appellant's conviction for resisting arrest where the Appellant wrestled with the arresting officer to prevent that officer from handcuffing him).

The jury was entitled to accredit the testimony of the prosecution witnesses, and it apparently did so. We decline to disturb that verdict on this appeal.

### III. IMPANELING THE JURY

Appellant next complains that the trial court erred in failing to comply with TENN. R. CRIM. P. 24(c) when impaneling the jury. Appellant's failure to contemporaneously object to the court's procedure for impaneling the jury has waived this issue on appeal. TENN. R. APP. P. 36(a). See also State v. Smith, 857 S.W.2d 1, 20 (Tenn. 1993) (holding that by not contesting the trial court's jury selection procedure until after the case was submitted to the jury, rather than contemporaneously objecting, the accused waived that issue on appeal).[3]

---

[3] It does appear that the trial court deviated from the procedure outlined in then existing TENN. R. CRIM. P. 24(c) for impaneling jurors. In 1997 Rule 24(e) was amended and would now allow the procedure employed by the trial judge.

## IV.  TRIAL COURT'S RESPONSES TO QUESTIONS POSED BY JURY DURING DELIBERATIONS

Appellant next asserts that the trial court erroneously responded to questions posed by the jury during its deliberations.  We disagree.

During its deliberations, the jury posed both written and oral questions to the court.  One of the written questions asked for a definition of the term "public place."

### A.  DEFINITION OF "PUBLIC PLACE"

Appellant argues that the trial court erred in defining the term "public place" because the court opted to inform the jury about this Court's opinion in State v. Lawson, 776 S.W.2d 139 (Tenn. Crim. App. 1989) rather than to read the definition contained in Tenn. Code Ann. 106(a)(29)[4] as requested by defense counsel.  Specifically, Appellant asserts that the court erred by not reading the final sentence of Tenn. Code Ann. § 39-11-106(a)(29).

Outside the jury's presence, the court informed counsel that it would respond to the jury's question by discussing our holding in Lawson.  The court refused defense counsel's request to read to the jury Tenn. Code Ann. § 39-11-106(a)(29).  Because of its opinion that "The only issue for this jury is whether or not people in the automobile were in a public place," the court believed that the statutory definition would only confuse the jury.  Thus, the court informed the

---

[4] Tenn. Code Ann. 39-11-106(a)(29) provides:

> "Public place" means a place to which the public or a group of persons has access and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, places of business, playgrounds and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.  An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place.

Id.

jury that "persons in a private vehicle are in a public place if they're on a public road. . . ."[5]

The law governing jury charges is equally applicable to responses to questions submitted by the jury during deliberations. The trial court is obliged to give jury instructions that fairly and accurately set forth the applicable law as it applies to the facts of a particular case. State v. Stoddard, 909 S.W.2d 454, 460 (Tenn. Crim. App. 1994). Moreover, the court may decline a special request where the court's jury instruction provides a complete statement of the law. Id. (citing State v. Middlebrooks, 840 S.W.2d 317, 335 (Tenn. 1992). In State v. Cassandra Mathis, Mattie Lue Drake and Amanda Drake, this Court held that it is permissible for trial courts to employ appellate opinions when formulating jury charges. C.C.A. No. 87-11-III, slip. op. 1, 7, Williamson County (Tenn. Crim. App., Nashville, March 18, 1988). The statutory definition of "public place" is not markedly different from this Court's explication of that term in the Lawson decision. We find that the trial court did not err in explaining to the jury this Court's holding in the Lawson decision.

### B. IMPROPER COMMENT ON THE EVIDENCE

In addition to the written submission, the following colloquy took place between the court and a concerned juror:

> JUROR: My other question concerns having a designated driver. If one is under the influence and he ask [sic] someone

---

[5] This is an accurate paraphrase of our holding in Lawson, 776 S.W.2d 139:

> A "public place" is a place to which the general public has a right of access. A location to which such a right of access exists does not lose its character as a "public place" simply because others are not present to observe the defendant's drunken condition. Moreover, we conclude, as have courts in other jurisdictions that the Appellant's presence inside a vehicle on a public road does not alter the "public" character of that road or convert the Appellant's condition into one of private rather than public intoxication.

Id. at 140-41.

to drive, because they feel they're not able to. And we hear so much about this in the media and so if you have a designated driver and let's just say I'm sitting somewhere in the car and you know, half out of this world, so I've got someone driving for me.

THE COURT: And they mess up and you end up in a public place in an intoxicated stage [sic], you may run the risk there.

JUROR: So am I harming other people and properties? How am I going to get home from the bar? If I get in the car and drive down the road I really am in trouble.

The court responded:

This is something for you to decide as to whether or not this individual was truly in danger of harming himself or others. The Tennessee Supreme Court says if the explanation has been raised that a person might walk down the road and get hit by a car if they were left in this situation. They've said that that does comply with a requirement, at least, a minimum requirement that would support a jury's finding that the person was possibly in danger of harming himself or others, but this is one of. . . those common sense things that you all are going to have to apply to the facts in this case. . . .

Defense counsel lodged an objection to the court's discussion of the Tennessee Supreme Court case.

Tenn. Code Ann. § 39-17-310 provides in part:

(a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:
(1) The offender may be endangered;
(2) There is endangerment to other persons or property; or
(3) The offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-17-310(a).

Appellant complains that the court's final response constituted improper comment on the evidence. We agree.

Article 6, § 9 of the Tennessee Constitution prohibits trial judges from commenting on the evidence of the case. That section provides, "The Judges shall not charge juries with respect to matters of fact, but state the testimony and

-10-

declare the law." Tenn. Const. art. 6, § 9. In State v. Suttles, the Tennessee Supreme Court cautioned, "In all cases the trial judge must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." 767 S.W.2d 403, 406-07 (Tenn. 1989). Our supreme court has also admonished, "The trial judge should always be extremely careful not to express or intimate any opinion on any fact to be passed upon by the jury." Graham v. McReynolds, 18 S.W. 272, 275 (Tenn. 1891).

In this case the efficacy of the public intoxication charge turned on whether Appellant posed a danger to himself or others. While the trial court correctly told the jury during the colloquy that they must decide whether the defendant was a danger to himself or others, the judge went further and offered an example of such a situation, a fact hypothetical very similar to the instant case as permitting a finding that the defendant was a danger to himself. this is in impermissible comment on the evidence that we cannot say is harmless under the circumstances of this case.

The judgment of the trial court finding Appellant guilty of public intoxication is reversed and remanded for a new trial.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE


_____
DAVID G. HAYES, JUDGE