IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 17, 2000

**State of Tennessee v. Lester Parker**

**Appeal from the Criminal Court for Blount County**
**No. C-10601    D. Kelly Thomas, Jr., Judge**

**No. E2000-00282-CCA-R3-CD**
**December 20, 2000**

The defendant appeals from a jury trial conviction for criminal attempt to possess Schedule II controlled substance with intent to deliver. In the appeal, the defendant alleges that the evidence was insufficient to support the jury's verdict, the trial court erred in allowing a positive drug test of the defendant to be admitted into evidence, and the trial court erred in denying the defendant's motion to remand the case to the General Sessions Court for a preliminary hearing. We conclude that the issues presented for appeal are without merit and affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court: Affirmed.**

WILLIAM B. ACREE, JR., SP.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and DAVID H. WELLES, JJ. joined.

Jon A. Anderson, for the appellant.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Michael Flynn, District Attorney General; and William Reed, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted of criminal attempt to possess Schedule II controlled substance with intent to deliver, a Class D felony. He was sentenced by the trial court to two years supervised probation. In this appeal, the defendant presents the following issues for review: (1) the evidence was insufficient to support the jury's verdict; (2) the trial court erred in allowing a positive drug test to be admitted into evidence; and (3) the trial court erred in denying the defendant's motion to remand the case to the General Sessions Court for a preliminary hearing.

In determining whether the evidence is sufficient to support the verdict of the jury, it is necessary to review the facts of the case.

The defendant was employed by the City of Alcoa as an animal control officer. During early 1997, he contacted Joy Hubbard and inquired if she had animals running at large. She replied that she did not. During the conversation, the defendant asked for her phone number and later made several calls to her. Ms. Hubbard eventually became suspicious that the defendant was involved in illegal drug activity and contacted the Alcoa Police Department. She was told to contact them again if she obtained any additional information. On June 20, 1997, the defendant called Ms. Hubbard, and she contacted the police department. She met with several police officers, and they placed a wire on her. Pursuant to the defendant's instructions, Ms. Hubbard met the defendant at the Rock Gardens Park where she gave him $40.00. The police officers observed and monitored this meeting.

After leaving the park, Ms. Hubbard returned home. Her exhusband and one of the police officers went into her basement. The defendant then arrived at Ms. Hubbard's house. According to Ms. Hubbard and to the officer in the basement, the defendant wanted an aluminum can which she did not have. The defendant then left Ms. Hubbard's home. After he left, a second officer went into the basement. The defendant returned to Ms. Hubbard's house with an aluminum can. He laid small rocks on the can, lit them and used the can to smoke the rocks. A forensic scientist from the T.B.I. Crime Laboratory later identified the residue on the can to be cocaine. The officers in the basement testified that they heard the defendant talking to Ms. Hubbard about drugs. They also heard Ms. Hubbard ask the defendant to give her her part of the drugs. Eventually, the defendant left Ms. Hubbard's home.

The defendant related a rather unusual story. In the way of background, he had previously worked as an informant for the Drug Task Force. He then obtained a job with the sanitation department of the City of Alcoa. While working in that capacity, he filed a lawsuit against the city. He testified that as a part of the settlement of the case, he became the animal control officer.

The defendant testified that when he first met Ms. Hubbard he was on an animal control call. According to the defendant, Ms. Hubbard stopped him and told him she wanted to discuss a problem with him. They went to Ms. Hubbard's house, and she brought out a box of records and several cases of micro cassettes. The defendant believed this was evidence of corruption in the Alcoa Police Department. The defendant explained that the reason Ms. Hubbard made him aware of this information was because he had a reputation of one who was not afraid to fight city hall. The defendant testified that he later talked to a city commissioner who told him that he would have to have material evidence to proceed against the police department. The defendant said that it was his duty to gather evidence against corrupt policemen.

After the initial conversation, the defendant said he saw Ms. Hubbard on several occasions, and she continued to express an interest in turning this information over to him. In mid-June, the defendant told Ms. Hubbard that she should come up with some money so that he could take the information, make copies of it, document it and put it in chronological order. A few days later, they talked again by telephone, and Ms. Hubbard asked the defendant to "front her" some dope. They

then agreed to meet in the park. When they met, Ms. Hubbard gave him money and asked him when he was going to get the dope.

After leaving the park, the defendant went to a gas station and bought gas and beer. He then went to Ms. Hubbard's house where she talked to him about drugs. The defendant left and returned. When he returned, Ms. Hubbard offered him a drink of Kool-aid and vodka. The defendant said that after drinking part of it, he felt strange and his thought processes went astray. He believed the drink contained cocaine. He then pretended to smoke cocaine to persuade Ms. Hubbard to give the information about the corrupt cops to him.

The defendant left and was arrested later that night.

The next day, the defendant went to the Blount County Memorial Lab and underwent a drug test which he failed.

In determining the sufficiency of the convicting evidence, this Court does not reweigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776 (Tenn.Crim.App. 1990), State v. Butler, 900 S.W.2d 305 (Tenn.Crim.App. 1994). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all the factual issues raised by the evidence are resolved by the trier of fact, not this court. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). A guilty verdict, approved by the trial judge, credits the testimony of the State's witnesses and resolves all conflicts of testimony in favor of the theory of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978). Since a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the jury. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982), Butler, at 309. This court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Tuggle, at 914, Butler, at 309.

We find the evidence is clearly sufficient to support the jury's verdict. Direct evidence of the defendant's guilt was presented through several witnesses. The defendant attempted to refute this testimony by a rather incredible story which the jury did not believe. This issue is without merit.

The second issue presented for review is the trial court erred in allowing a positive drug test of the defendant to be admitted into evidence.

The defendant filed a motion in limine in the trial court to exclude the results of a drug test. The defendant took that test at the Blount County Memorial Lab on June 22, 2997, the day after he was at Ms. Hubbard's house. The defendant contends that he was required to take this test by his employer, the City of Alcoa and had he failed to do so, he would have been summarily discharged. It appears from the record that an evidentiary hearing was held upon this issue; however, neither the

evidence presented at the hearing nor the court's ruling upon the motion is a part of this record.[1]

The State introduced evidence of the prior drug test during its proof in chief. The defendant objected to the drug test upon the ground that it was irrelevant. The trial court overruled the objection.

The defendant asserts several grounds for excluding the drug test in addition to the objection of irrelevance; however, there is no factual basis in the record to support these grounds. Apparently, this evidence was presented at the hearing upon the defendant's motion in limine.

It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn.R.App.P. 24(b); State v. Miller, 737 S.W.2d 556, 558, (Tenn.Crim.App. 1987). When the record is incomplete and does not contain information relevant to a particular issue, this Court may not make a ruling and must presume the correctness of the trial court. See State v. Miller, 737 S.W.2d 556, 558 (Tenn.Crim.App. 1987); State v. Cooper, 736 S.W.2d 125, 131 (Tenn.Crim.App. 1987). Accordingly, the only ground we can consider in deciding this issue is the objection made at trial that this evidence is not relevant.

The issue of relevancy of a drug test was addressed in State v. Stoddard, 909 S.W.2d 454 (Tenn.Crim.App.). In Stoddard, the defendant was a Memphis police officer charged with possession of cocaine and marijuana. His defense was that he found the drugs in the course of his duties and had not yet had the opportunity to take them to the property room. In support of this defense, he attempted to introduce a negative drug test into evidence, but the test was excluded by the trial court.

In holding that the test was relevant, the Court held:

> "Rule 401 of the Tennessee Rules of Evidence provides that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Commission Comments provide that the "test for admissibility is a lenient one." The determination of relevance or the probative value of the evidence is within the sound discretion of the trial court. State v. Leath, 744 S.W.2d 591, 593 (Tenn. Crim. App. 1987).
>
> Due to the self-ascribed leniency of Rule 401, we tend to agree that the drug test was relevant. However, the probative value of this evidence is obviously slight and does not amount to prejudicial error. We therefore find that any error in not admitting the drug

---

[1]Obviously, the motion in limine was overruled because evidence of the positive drug test was admitted into evidence at the trial.

screen into evidence to be harmless."

Stoddard, at 459.

In case of sub judice, the State argues that the results of the drug test were relevant to corroborate the testimony of State witnesses that the defendant smoked crack cocaine at Ms. Hubbard's home. We agree with the State's argument, although we also observe that the results of the drug test corroborate the defendant's argument that he drank Kool-aid spiked with cocaine. In summary, we hold that the positive drug test was relevant evidence.

The third and final issue presented for review is that the trial court erred in denying the defendant's motion to remand the case to the General Sessions Court for a preliminary hearing. The defendant asserts that although he was indigent, the General Sessions Judge refused to appoint him an attorney. He admits that he waived his preliminary hearing, but insists that the waiver was under duress.

The record reflects that after the defendant was bound over to the grand jury, but before he was indicted, he filed a motion in the Circuit Court to stay the presentation of his case to the grand jury and to remand it to General Sessions Court for a preliminary hearing. The motion was prepared for the defendant by an attorney who was acting pro bono. The motion was denied by the Circuit Court without an evidentiary hearing. A transcript of the proceedings in the General Sessions Court has not been made a part of this record.

The defendant relies upon McKeldin v. State, 516 S.W.2d 82 (S.Ct. 1974). In McKeldin, the defendant was declared to be indigent and a person named Issiah Ewing was appointed to represent him. It subsequently developed that Mr. Ewing was neither trained nor licensed to practice law. The Supreme Court of Tennessee held: a preliminary hearing is a critical stage in the criminal prosecution; a criminal defendant is guaranteed the right to counsel at a preliminary hearing; and the State must provide competent counsel for an indigent defendant at the preliminary hearing. The case was remanded to the trial court for a determination of whether the denial of counsel at the preliminary hearing was harmless error. Id., at 86, 87.

We cannot determine from the record why the defendant was not represented by counsel at the preliminary hearing. If the defendant was indigent at the time and the General Sessions Judge arbitrarily denied him counsel, then the defendant is entitled to relief under McKeldin. On the other hand, if the defendant was not indigent or if he simply chose not to have an attorney, then the defendant is not entitled to relief. As previously stated, when the record is incomplete, this Court may not speculate on what happened in the lower courts. Therefore, we must presume there was a valid reason why the defendant did not have an attorney at the preliminary hearing..

There is an additional reason why the defendant is not entitled to a remand. This issue was not preserved by the defendant in his motion for new trial. Tenn.R.App.P. 3 (e) provides in part as follows:

"Provided, however, that in all cases tried by a jury, no issue
presented for review shall be predicated upon error in the admission

or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new  trial; otherwise such issues will be treated as waived."

This issue is waived because of the failure to include this issue in the motion for new trial.

In conclusion, we hold that the issues presented for review are without merit, and the judgment of the trial court is affirmed.

_____

William B. Acree, Jr., Special Judge